**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HECTOR MEZA-VAZQUEZ, *Petitioner*, v. MERRICK B. GARLAND, Attorney General, *Respondent.* | No. 15-72672 Agency No. A205-711-242 ORDER |

Filed April 1, 2021

Before: Richard A. Paez, Consuelo M. Callahan, and Patrick J. Bumatay, Circuit Judges.

Order

## SUMMARY[*]

### Immigration / Attorney's Fees

In a published order, the panel denied a motion for attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), in a case in which the panel had previously remanded Hector Meza-Vasquez's application for relief from removal to the Board of Immigration Appeals for reconsideration in light of the en banc court's intervening decision in *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051 (9th Cir. 2017) (en banc).

The panel concluded that the government's position was substantially justified and that Meza was therefore not entitled to attorney's fees. The panel wrote that when the government seeks a voluntary remand, which was the case here, the court evaluates substantial justification based on whether the request was motivated by "subsequent, novel considerations," which undercut a previously justified agency action. In other words, if the IJ's and Board's decisions were not contrary to controlling law at the time the decisions were rendered, and intervening case law has undercut the basis for those decisions, the government's position was and is substantially justified.

Noting that it had already recognized that the en banc decision in *Bringas-Rodriguez* acted as intervening case law, the panel addressed Meza's arguments that three aspects of the IJ's and Board's decisions were contrary to controlling law.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

First, Meza argued that under *Afriyie v. Holder*, 613 F.3d 924 (9th Cir. 2010), *overruled by Bringas-Rodriguez*, he was not required to report persecution to local authorities in order to meet the unable or unwilling to protect from persecution standard. The panel observed that while this was true, the IJ explicitly recognized that there was no per se requirement that a withholding applicant have reported the abuse. The panel further wrote that under *Afriyie*, the absence of a police report left a gap in proof about how the government would respond to the crime, and that gap had to be filled in by other methods to show the government was unable or unwilling to act. The panel concluded that the IJ's and Board's analysis regarding the gap in proof did not conflict with clearly established law.

Second, Meza argued that under *Vitug v. Holder*, 723 F.3d 1056 (9th Cir. 2013), the agency erred in relying on Mexican LGBT antidiscrimination laws in assessing whether the government was unable or unwilling to act. The panel noted that *Vitug* concerned only a single local ordinance and evidence of local activism, whereas the IJ and Board here also relied on national anti-discrimination laws and public acceptance of LGBT individuals. The panel concluded that the IJ and Board therefore did not violate clearly established law by finding that the State Department report Meza submitted provided mixed support for his case, and concluding that he had failed to meet his burden of proof.

Third, Meza argued that the IJ and Board acted contrary to controlling law when in considering the likelihood of torture they failed to recognize that Mexican authorities had ignored Meza's report of his sexual assault. The panel observed that the IJ and Board did, in fact, consider Meza's claim that he attempted to report his sexual assault, and that

the IJ merely found the claim not credible.  The panel noted that Meza did not argue that this credibility finding was not substantially justified.  The panel also noted that IJ and Board weighed other facts, including Meza's previous safe relocation within Mexico, the lack of prior harm rising to the level of torture, and country conditions reports failing to show that the government would acquiesce to Meza's torture.  The panel concluded that the determination that Meza was not eligible for protection under the CAT was therefore not contrary to controlling law.

Because the panel concluded that the government's position was substantially justified, it did not decide whether Meza was a prevailing party, or whether there were special circumstances rendering an award unjust.

---

### COUNSEL

Jean E. Reisz and Niels W. Frenzen, University of Southern California, Gould School of Law, Immigration Clinic, Los Angeles, California, for Petitioner.

Emily Anne Radford, Assistant Director; Nehal H. Kamani, Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**ORDER**

We consider a motion for attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).

**I.**

On April 14, 2020, we remanded Meza's application for relief to the Board of Immigration Appeals ("BIA"). *Meza-Vazquez v. Barr*, 806 F. App'x 593 (9th Cir. 2020). We did so after recognizing that this court's decision in *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051 (9th Cir. 2017) (en banc), may have called into question the BIA's decision in his case. *Meza-Vazquez*, 806 F. App'x at 594–95. Following our decision, Meza filed a timely motion under the EAJA for $17,580.01 in attorneys' fees and costs.

To be awarded attorneys' fees under the EAJA, (1) the party seeking fees must be a prevailing party, (2) the government's position must not have been substantially justified, and (3) there must not be special circumstances rendering an award unjust. 28 U.S.C. § 2412(d)(1)(A); *see Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013).

Because the government was substantially justified in its position, we deny Meza's motion.

**II.**

The government bears the burden of showing that it was substantially justified in "both [its] litigation position and the underlying agency action giving rise to the civil action." *Meier*, 727 F.3d at 870. Here, that means both the Immigration Judge's ("IJ") decision and the BIA's decision must have been substantially justified. *Li v. Keisler*, 505 F.3d 913, 918 (9th Cir. 2007).

To be substantially justified, the government's position must have been "justified to a degree that could satisfy a reasonable person." *Meier*, 727 F.3d at 870 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). In other words, its position must "ha[ve] a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2. The test is not whether the government was correct, but whether it was "for the most part" justified in taking the position that it did. *Id.* A position that "was not contrary to clearly established law" is thus substantially justified. *See Li*, 505 F.3d at 919–20.

## A.

The government voluntarily moved to remand Meza's case back to the BIA. *Meza-Vazquez*, 806 F. App'x at 595. When the government seeks a voluntary remand, we evaluate substantial justification based on whether the request was motivated by "subsequent, novel considerations," which undercut a previously justified agency action. *Li*, 505 F.3d at 919. In other words, if the IJ's and BIA's decisions were not contrary to controlling law at the time the decisions were rendered, and intervening case law has undercut the basis for those decisions, the government's position was and is substantially justified. *Id.* This rule ensures that the government is not punished for seeking remand when "intervening case law or new facts have legitimately rendered the underlying result legally suspect or otherwise unjust." *Id.* at 920.

We have already recognized that the en banc decision in *Bringas-Rodriguez* acted as intervening case law here. *Meza-Vazquez*, 806 F. App'x at 595. We accordingly granted the government's request for remand. *Id.* Given that intervening case law, so long as the IJ's and BIA's decisions were not contrary to controlling law at the time that they

were made, the government's position is substantially justified. *Li*, 505 F.3d at 919–20.

**B.**

Meza draws the court's attention to three aspects of the decisions by the IJ and BIA which Meza contends were contrary to controlling law.

First, Meza asserts that the IJ and BIA erred when they held that Meza failed to show the Mexican government was "unable or unwilling" to protect Meza from persecution. A government's inability or refusal to protect against persecution is a core requirement for withholding of removal. *Rahimzadeh v. Holder*, 613 F.3d 916, 920 (9th Cir. 2010). Key to the IJ's and BIA's holding was that Meza had failed to give Mexican government authorities a chance to act by reporting his sexual assault.

Meza argues that, under *Afriyie v. Holder*, 613 F.3d 924 (9th Cir. 2010), *overruled by Bringas-Rodriguez*, 850 F.3d at 1056, 1069–72, he was not required to report persecution to local authorities in order to meet the "unable or unwilling" standard. That is true. *Id.* at 931. Indeed, the IJ explicitly recognized that "there is no per se requirement that a withholding applicant have reported the abuse." But that is not the end of the inquiry; under *Afriyie*, the absence of a police report left "a gap in proof about how the government would respond" to the crime, and that gap must be filled in "by other methods" to show the government was unable or unwilling to act. *Id.* Thus, contrary to Meza's contention, the IJ and BIA did not hold that reporting persecution was strictly necessary, and their analysis regarding the gap in proof did not conflict with clearly established law.

Second, Meza faults the use of Mexican LGBT antidiscrimination laws in the IJ's and BIA's decisions. In analyzing whether Meza filled in the "gap in proof," the IJ and BIA reviewed a State Department report submitted by Meza. The IJ and BIA noted that the report relayed some instances of police inaction and discrimination, but also discussed Mexico's LGBT anti-discrimination laws, growing public acceptance of LGBT individuals, local LGBT marriage and adoption rights, and local governmental promotion of tolerance and respect. The IJ and BIA concluded that Meza had failed to meet his burden of proving the Mexican government would have failed to act.

Meza relies on *Vitug v. Holder*, 723 F.3d 1056 (9th Cir. 2013), to argue that this position was contrary to controlling law. There, we held that the existence of LGBT activism and a local anti-discrimination ordinance "do[] not indicate that there is any less violence against gay men or that police have become more responsive to reports of antigay hate crimes." *Id.* at 1066. Thus, Meza asserts that the government's position violated clearly established law. But *Vitug* concerned only a single local ordinance and evidence of local activism, whereas the IJ and BIA here also relied on national anti-discrimination laws and public acceptance of LGBT individuals. The IJ and BIA did not violate clearly established law by finding that Meza's report provided mixed support for his case and concluding that he had failed to meet his burden of proof. *See Castro-Martinez v. Holder*, 674 F.3d 1073, 1081 (9th Cir. 2011) (holding that an alien's country-reports evidence was insufficient to establish past persecution), *overruled by Bringas-Rodriguez*, 850 F.3d at 1056, 1069–72.

Third, Meza argues that the IJ and BIA acted contrary to controlling law when they concluded that Meza failed to

show under the Convention Against Torture ("CAT") that he would be tortured upon removal to Mexico. *Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir. 2003). Specifically, he asserts that the IJ and BIA failed to recognize that Mexican authorities had ignored Meza's report of his sexual assault.

But the IJ and BIA did, in fact, consider Meza's claim that he attempted to report his sexual assault. The IJ merely found the claim not credible, and Meza does not argue that this credibility finding was not substantially justified. *See Shrestha v. Holder*, 590 F.3d 1034, 1048–49 (9th Cir. 2010) (discussing adverse credibility determinations in the CAT context). In concluding Meza was unlikely to be tortured upon his return to Mexico, the IJ and BIA also weighed other facts. Specifically, the IJ and BIA found that Meza had previously safely relocated within Mexico, that Meza's complaints of prior discrimination did not rise to the level of torture, and that the country conditions reports had not shown the government would acquiesce to Meza's torture. *See Tamang v. Holder*, 598 F.3d 1083, 1095 (9th Cir. 2010) (holding that, when evaluating a CAT claim, "evidence of relevant country conditions is extremely important, as is the ability of [the alien] to safely relocate to another part of his country of origin.") Thus, the determination that Meza was not eligible for protection under the CAT was not contrary to controlling law.

\* \* \*

Because the government's position was substantially justified, EAJA fees are not appropriate, and we need not decide whether Meza was a prevailing party, or whether there are special circumstances rendering an award unjust.

Petitioner's motion for attorneys' fees is **DENIED**.